UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW POZNIAK, DARRELL PARKINSON, and PATTY PARKINSON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Defendants. | Case No. _____<br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Andrew Pozniak, Darrell Parkinson, and Patty Parkinson ("Plaintiffs"), individually and on behalf of others similarly situated, and for their Complaint against Twin City Fire Insurance Company ("Twin City") and Hartford Casualty Insurance Company ("Hartford") (collectively, "Defendants"), state and allege the following:

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1. Plaintiff Andrew Pozniak ("Pozniak") is a citizen and resident of Cook County, Illinois. At all times relevant hereto, Pozniak owned the property located at 3850 Industrial Ave., Rolling Meadows, Illinois 60008.

2. Plaintiffs Darrell Parkinson and Patty Parkinson (the "Parkinsons"), husband and wife, are citizens and residents of Marion County, Illinois. At all times relevant hereto, the Parkinsons owned the property located at 4947 England Road, Kell, Illinois 62853.

3.     Defendant Twin City is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut. Twin City is a citizen of Connecticut.

4.     Defendant Hartford is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut. Hartford is a citizen of Connecticut.

5.     Defendants are affiliated companies within The Hartford Financial Services Group, Inc.

6.     Defendants offer property insurance in multiple states across the United States of America, specifically including the states of Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin.

7.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Defendants' property insurance policyholders who are similarly situated.

8.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant, the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Defendants as Defendants conduct business in Connecticut and maintain their corporate office in Connecticut, and specifically in this judicial district.

10.    Venue is proper in this forum pursuant to 28 U.S.C. §1391(b), as Defendants' principal place of business and primary corporate office is in this judicial district and a substantial

part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTS

A. **Defendants' Property Insurance Policies**

11. Defendants sell property insurance coverage for, *inter alia*, homes and commercial buildings in multiple states, specifically including Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin.

12. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

13. Further, this lawsuit only concerns claims wherein Defendants themselves accepted coverage and then Defendants themselves chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology.

14. The property insurance forms sold by Defendants in Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin are materially identical as it relates to the contractual dispute set forth herein.

15. The laws in Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. Specifically, these states are "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies, or preclude the depreciation of labor when the property insurers' policy forms do not expressly allow for the same by court decision, statute or state administrative agency in situations where the property insurer itself

3

chooses to calculate actual cash value exclusively pursuant to the "replacement cost less depreciation" methodology.

    **B.    The Pozniak Policy and Casualty Loss**

16. Pozniak contracted with Twin City for an insurance policy providing coverage for certain losses to his property located at 3850 Industrial Ave., Rolling Meadows, Illinois 60008 (the "Pozniak Property"). The policy number was 83SBAAD2792SA (the "Pozniak Policy").

17. Pozniak paid Twin City premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

18. On or about May 17, 2020, the Pozniak Property suffered damage covered by the Pozniak Policy. The damage to the Pozniak Property required replacement and/or repair.

19. Poziak timely submitted a claim to Twin City requesting payment for the covered loss.

20. Twin City determined the loss to the Pozniak Property was covered by the terms of the Pozniak Policy.

21. Twin City calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Twin City subtracts the estimated depreciation.

22. The Pozniak Policy does not permit the withholding of labor as depreciation as described below.

    **C.    Twin City's Calculation of Pozniak's ACV Payments**

23. In adjusting Pozniak's claim, Twin City affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate Pozniak's loss and to make its

4

ACV payment. Twin City did not use any other methodology to calculate Pozniak's ACV payment.

24.     After Pozniak's loss was reported, Twin City sent an adjuster to inspect the damage and estimate the ACV. Twin City uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to Pozniak is called Xactimate®.

25.     As set forth in a written Xactimate® estimate provided to Pozniak by Twin City and dated July 7, 2020, Twin City's adjuster determined that Pozniak had suffered a covered loss in the amount of $62,331.22 (the RCV) to his property. The estimate included the cost of materials and labor required to complete the repairs.

26.     In calculating its ACV payment obligations to Pozniak, Twin City subtracted from the RCV estimate the $500.00 deductible provided for in the policy plus an additional amount ($14,105.29) for depreciation. Twin City further subtracted $35,428.69 for a prior payment, resulting in a net ACV payment of $12,297.25. Pozniak was underpaid on his ACV claim as more fully described below.

        **D.**     **The Parkinson Policy and Casualty Loss**

27.     The Parkinsons contracted with Hartford for an insurance policy providing coverage for certain losses to their property located at 4947 England Road, Kell, Illinois 62853 (the "Parkinson Property"). The policy number was 84RBB699181 (the "Parkinson Policy").

28.     The Parkinsons paid Hartford premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

29.     On or about March 27, 2021, the Parkinson Property suffered damage covered by the Parkinson Policy. The damage to the Parkinson Property required replacement and/or repair.

5

30. The Parkinsons timely submitted a claim to Hartford requesting payment for the covered loss.

31. Hartford determined the loss to the Parkinson Property was covered by the terms of the Parkinson Policy.

32. Hartford calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Hartford subtracts the estimated depreciation.

33. The Parkinson Policy does not permit the withholding of labor as depreciation as described below.

  E. **Hartford's Calculation of the Parkinsons' ACV Payments**

34. In adjusting the Parkinsons' claim, Hartford affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the Parkinsons' loss and to make its ACV payment. Hartford did not use any other methodology to calculate the Parkinsons' ACV payment.

35. After the Parkinsons' loss was reported, Hartford sent an adjuster to inspect the damage and estimate the ACV. Hartford uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to the Parkinsons is called Xactimate®.

36. As set forth in a written Xactimate® estimate provided to the Parkinsons by Hartford and dated June 24, 2021, Hartford's adjuster determined that the Parkinsons had suffered a covered loss in the amount of $6,648.23 (the RCV) to their property. The estimate included the cost of materials and labor required to complete the repairs.

37. In calculating its ACV payment obligations to the Parkinsons, Hartford subtracted from the RCV estimate the $1,000.00 deductible provided for in the policy plus an additional amount ($3,537.71) for depreciation, resulting in a net ACV payment of $2,110.52. The Parkinsons were underpaid on their ACV claim as more fully described below.

### F. Defendants' Practice of Withholding Labor as Depreciation

38. When Defendants calculated Plaintiffs' ACV benefits owed under Plaintiffs' policies, Defendants withheld costs for both the materials and labor required to repair or replace the Plaintiffs' buildings as depreciation, even though labor does not depreciate in value over time. Defendants withheld labor costs throughout their ACV calculations as depreciation.

39. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Defendants allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

40. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

41. Defendants' withholding of labor costs as depreciation associated with the repair or replacement of Plaintiffs' properties resulted in Plaintiffs receiving payment for their losses in an amount less than they were entitled to receive under their policies. Defendants breached their obligations under Plaintiffs' policies by improperly withholding the cost of labor as depreciation.

42. Plaintiffs cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided. To determine the precise amount of labor

withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

43. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the policy forms at issue in Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin when using a replacement cost less depreciation methodology.

44. Defendants' failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their losses.

45. Plaintiffs dispute whether portions of the agreed-to and undisputed amounts of labor, as determined by Defendants themselves, may be withheld by Defendants as "depreciation" from Defendants' ACV payments under the terms and conditions of Plaintiffs' policies.

46. Defendants materially breached their duty to indemnify Plaintiffs by withholding labor costs from ACV payment as depreciation, thereby paying less than Plaintiffs were entitled to receive under the terms of their policies, including but not limited to depriving Plaintiffs of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

47. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

48. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

49. The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All Twin City or Hartford policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin; and (2) for which Twin City or Hartford accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.

The class also excludes any claims, or portions of claims, arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective states at issue.

50. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

51. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted

under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

52. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin have been damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants.

53. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

54. Defendants have acted on grounds generally applicable to the proposed class in that Defendants have routinely withheld labor costs as described herein in their adjustment of property damage claims under their policies of insurance. It is reasonable to expect that Defendants will continue to withhold labor to reduce the amount they pay to insureds under their policies absent this lawsuit.

55. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

      a.      Whether Defendants' policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

      b.      Whether Defendants' policy language is ambiguous;

      c.      Whether Defendants' withholding of labor costs in the calculation of ACV payments breaches the Defendants' insurance policy forms;

      d.      Whether Defendants have a custom and practice of withholding labor costs in the calculation of ACV payments;

      e.      Whether Plaintiffs and members of the proposed class have been damaged as a result of Defendants' withholding of labor costs in the calculation of ACV payments owed; and

      f.      Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

56. Plaintiffs' claims are typical of the claims of the proposed class members, as they are all similarly affected by Defendants' customs and practices concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because Plaintiffs' claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

57. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the

necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join Plaintiffs in seeking to be additional class representatives.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

59. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

60. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient

adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief.  On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendants' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

61. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

62. Plaintiffs may seek, in the alternative, certification of issues classes.

63. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

### COUNT I - BREACH OF CONTRACT

64. Plaintiffs restate and incorporate by reference all preceding allegations.

65. Defendants entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Defendants and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

66. These policies of insurance are binding contracts under Arizona, California, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Washington, and Wisconsin law, and supported by valid consideration in the form of premium payments in exchange for insurance coverage.

67. Defendants drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendants calculate ACV under a replacement cost less depreciation methodology.

68. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

69. Defendants breached their respective contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

70. Additionally, Defendants' actions in breaching their contractual obligations to Plaintiffs and members of the proposed class benefitted and continues to benefit Defendants. Likewise, Defendants' actions damaged and continue to damage Plaintiffs and members of the proposed class.

71. Defendants' actions in breaching their contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

72. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

73. Plaintiffs restate and incorporate by reference all preceding allegations.

74. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

75. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

76. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

77. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Defendants' property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

78. Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

79. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representative of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendants' withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which it is entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Dated: February 1, 2022                         Respectfully submitted,

/s/ Sean K. Collins
SEAN K. COLLINS
(CT Bar #429923)
**LAW OFFICES OF SEAN K. COLLINS**
184 High Street, Suite 503
Boston, MA 02110
Tel: (855) 693-9256
sean@neinsurancelaw.com

J. BRANDON McWHERTER*
(TN Bar #21600)
**McWHERTER SCOTT BOBBITT PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
Tel: (615) 354-1144
brandon@msb.law

ERIK D. PETERSON*
(KY Bar #93003)
**ERIK PETERSON LAW OFFICES, PSC**
249 E Main Street, Suite 150
Lexington, KY 40507
Tel: (800) 614-1957
erik@eplo.law

*Applications for *pro hac vice* to be filed.

*Attorneys for Plaintiffs and
the Proposed Classes*